912 P.2d 567

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Marc NOBRIGA, Defendant–
Appellant.   (Two Cases)**

**Nos. 16605, 16604.**

Intermediate Court of Appeals of Hawai'i.

Feb. 26, 1996.

As Amended March 11, 1996.

Seth Thompson (Shigetomi & Thompson, of counsel), on the brief, Honolulu, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, Department of the Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

In these consolidated appeals, Defendant–Appellant Marc Nobriga (Defendant) appeals from two September 28, 1992 judgments of the District Court of the First Circuit, convicting him of three Animal Nuisance violations, in contravention of Revised Ordinances of Honolulu (ROH) §§ 7–2.3 (1990)[1] and 7–2.2(a) (1990).[2]

Defendant contends that (1) the trial court erred in denying his motions for judgment of acquittal because the State failed to prove that he received the mandatory warning set forth in ROH § 7–2.10(a) (1990)[3] before being cited for Animal Nuisance, (2) the trial court erred in denying his motions for judgment of acquittal because the State failed to prove that keeping roosters on Defendant's property was not a "permitted use" under the Animal Nuisance ordinance, and (3) the

1. Revised Ordinances of Honolulu (ROH) § 7–2.3 (1990) provides, in relevant part:
   It is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7–2.2[.]

2. ROH § 7–2.2 (1990) defines the offense of "animal nuisance," in pertinent part, as follows:
   "Animal nuisance," for the purposes of this section, shall include but not be limited to any animal, farm animal or poultry which:
   (a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property[.]
   ROH § 7–2.2 also defines "poultry" as "chickens, roosters, pigeons, turkeys, geese, ducks and peacocks not regulated by state law."

3. ROH § 7–2.10 (1990) provides, in relevant part:

   (a) Any owner keeping or permitting to remain on any premises within the City and County of Honolulu an animal, farm animal or poultry in violation of this article shall receive a warning citation which will require the owner to follow specific instructions for the imposition of additional requirements as given by the Humane Society. Additional requirements may include reductions in the number of animals, farm animals or poultry being kept and the partial or complete removal of such, or providing a soundproof structure in accordance with the requirements of the Hawaiian Humane Society. The owner who receives a warning citation shall not be required to post bail or be subject to the penalty provisions, provided, the owner in good faith carries out the instructions given to said person by the Humane Society.

State did not present sufficient evidence to sustain the verdicts against him.

We reverse Defendant's convictions.

## BACKGROUND

### A. *Appeal No. 16605*

The evidence at Defendant's August 10, 1992 trial established that Defendant kept roosters on his property in Pūpūkea, Oʻahu. When his roosters began crowing in the early morning hours on April 5, 1992, Defendant's neighbor, Anita Kelly (Kelly), called the police to complain. Police Officer Carl Nakasone (Officer Nakasone) subsequently met Kelly at her residence at 5:22 a.m., walked along the fence line separating Kelly's and Defendant's properties, and observed over twenty wooden A-frame structures and "at least twenty-three" roosters in Defendant's backyard. Officer Nakasone testified that "[a] lot of the roosters were sitting on top of the A-frames and crowing," and that "the crowing was constant" throughout the forty minutes he was there.

Officer Nakasone stated that he was unable to meet with Defendant that morning because Defendant had already left for work. However, as Officer Nakasone was returning to the police station, he happened to see Defendant in traffic and issued Defendant a citation for Animal Nuisance at that time.

The following day, when Defendant's roosters again began crowing in the early morning, Kelly complained to the Hawaiian Humane Society (Humane Society), which dispatched Assistant Investigator James A. Kiyono (Kiyono) to Defendant's residence. Kiyono testified that after his arrival at about 7:55 a.m., he observed more than twenty roosters on Defendant's property crowing constantly for at least forty-five minutes. Kiyono subsequently issued to Defendant by certified mail a citation for Animal Nuisance.

After the State rested, Defendant moved for a judgment of acquittal on the ground that the State had not shown that Defendant had been issued a warning citation prior to being cited for Animal Nuisance, as required by ROH § 7–2.10(a). The district court denied the motion.

Defendant rested without calling any witnesses and then renewed his motion for acquittal on the same ground and upon the additional ground that "[t]here has been no testimony given in this trial that the use, the keeping of the livestock on the premises here, . . . is not a permitted use under, under Land Use Regulations or Statutes." Defendant argued that under ROH § 7–2.4(a),[4] a property owner could not be prosecuted for Animal Nuisance if he or she were allowed by land use or zoning regulations to raise, breed, or keep animals, farm animals, or poultry on the premises as a commercial enterprise or for food purposes. After the court asked Defendant whether there was any evidence in the record that Defendant's roosters were being kept for a commercial enterprise or for any purpose, Defendant's attorney stated:

> I would acknowledge to the Court that there is no evidence one way or another as far as the use to which it's permitted. But it is incumbent upon the State to indicate that the use was not so permitted. That's their burden of proof in showing that the prohibition under this article apply [sic] to [Defendant] and the animals which are kept on his property. Your Honor, at this point there's a dearth of evidence to establish that they have met that threshold value of showing the application of this section to [Defendant]. It's a matter of burden of proof, Your Honor, especially when you're faced with this type of exclusion. This doesn't place a burden on [Defendant], to show that it's permitted.

The State argued that the "permitted use" exception was an affirmative defense and that Defendant needed to at least lay out a "barebones [sic] defense" before the burden shifts to the State to either disprove that defense or have the case dismissed. The court agreed with the State and denied Defendant's motion for acquittal.

---

4. ROH § 7–2.4 (1990) provides that:

    (a) Nothing in this article applies to animals, farm animals or poultry raised, bred or kept as a commercial enterprise or for food purposes where commercial kennels or the keeping of livestock is a permitted use.

Defendant was thereafter adjudged guilty of committing the offense of Animal Nuisance on both April 5 and 6, 1992, and on September 28, 1992, he was sentenced to pay fines of $25 and $50, respectively, for the offenses.

### B. *Appeal No. 16604*

As a result of his crowing roosters, Defendant was cited on July 1, 1992 for another Animal Nuisance offense.

At Defendant's September 21, 1992 trial for this offense, Kelly testified that she and Defendant lived in an area which was zoned "Country." Sometime in May or June of 1992, Defendant built in his backyard, out of corrugated roofing metal, an eight-foot-high enclosure for his roosters. Although Kelly could no longer see the roosters, she heard them crowing continuously from 3:45 a.m. on July 1, 1992. As a result, she called the Humane Society, which once again sent Kiyono to meet with her.

Kiyono testified that after arriving at Kelly's home at 9:15 or 9:20 a.m., he "heard a whole bunch of roosters crowing consistently" in Defendant's backyard, although he could not see them due to the enclosure's solid metal walls. The roosters crowed throughout the forty-five to fifty-five minutes he was at Kelly's home. Kiyono then left a notice on Defendant's gate, indicating that a citation for Animal Nuisance would be sent to him by certified mail.

Defendant then testified that although he had at one time kept at the most sixteen roosters on his property, he had reduced the number of roosters to two prior to June 15, 1992, because he knew that the noise was bothering his neighbors.

Defendant also stated that he had obtained a permit from the City and County of Honolulu Building Department (Building Department) to construct the "A-frame, the tee-pees [sic] ... chicken coops plus the larger the [sic] white chicken coop" on his property. Defendant claimed that when he initially applied for the permit, Building Department staff informed him that they had to do "research on the property to find out if it was agricultural land. If chickens were a permit-

ted use." In March 1992, according to Defendant, the Building Department notified him in writing that he could raise "any amount of chickens" he wanted on his property, "as long as it was for home consumption and not for ... commercial use." Defendant added that he did not sell any of his chickens.

The written notification by the Building Department, offered by Defendant into evidence as Exhibit A, was actually a Notice of Zoning Violation (Notice), issued to Defendant and his wife (collectively, the Nobrigas) on March 9, 1992. The Notice, signed by Inspector Daniel Brum, informed the Nobrigas that they were in violation of chapter 21A, ROH § 5.30–4 and article 9 of the Land Use Ordinance, as follows:

Approximately 36 chickens are being raised on this 1.045 acres lot in a Country zoned district.

Chickens (no limit) may be raised, bred and consumed by the owners on this zoning lot. However, the raising and breeding of chickens for sale on or off the property is considered livestock prodection [sic], major, and not permitted.

The Notice also instructed the Nobrigas:

You are hereby ordered to start making corrections immediately and complete all work within thirty (30) days from date of notice. Please call the undersigned after corrections have been made.

Because the violation(s) listed above is/are in violation of the Land Use Ordinance, this case will be referred to the Department of Land Utilization for civil fines if not corrected within the time period allotted [sic].

The Notice in the record on appeal does not indicate, however, what corrections the Nobrigas were required to make.

On cross-examination, Defendant explained that he had built the metal enclosure "as a wind break and for sound deterrent ... to try to alleviate the noise." Defendant also stated that, although his roosters were game roosters, he did not breed them for fighting, but for "consumption" and to display at the annual Hawaii Game Breeders Association show. Defendant agreed, however, that

there were other types of chickens, instead of gamecocks, which he could breed for food.

Thereafter, Defendant rested and moved for a judgment of acquittal, on the grounds that the evidence showed that the keeping of roosters on his property fell under the permitted use exception of ROH § 7–2.4(a), and because he had not received a warning prior to being cited, as required by ROH § 7–2.10. The court denied the motion and found Defendant guilty of violating the Animal Nuisance ordinance on July 1, 1992. For this offense, Defendant was sentenced on September 28, 1992 to pay a $100 fine, serve a six-month probation term, and attend a training program conducted by the Humane Society.

## DISCUSSION

A. *The Warning Citation Requirement Under ROH § 7–2.10(a)*

■ Defendant contends that all three of his convictions should be reversed because the State failed to prove that he was issued a warning citation, as required by ROH § 7–2.10. We agree.

■ Under the scheme set forth in ROH § 7–2.10, a property owner cannot be cited for Animal Nuisance unless he or she has first received a warning citation requiring "the owner to follow specific instructions for the imposition of additional requirements as given by the Humane Society. Additional requirements may include reductions in the number of animals, farm animals or poultry being kept and the partial or complete removal of such, or providing a soundproof structure in accordance with the requirements of the ... Humane Society." ROH § 7–2.10(a). It is only when the owner fails to comply with the requirements set forth in the warning citation that the owner is subject to punishment for Animal Nuisance. ROH § 7–2.10(b) (1990).

It is the warning citation which instructs the owner as to the requirements which he or she must comply with in order to avoid punishment. Therefore, it is incumbent on the State to prove, as an element of the Animal Nuisance offense, that the requisite warning citation was issued to the owner.

The State "concedes that the proof at trial did not show that Defendant was warned to rectify his noise problem prior to the issuance of [the April 5, 1992] citation[,]" and that "the trial court should have granted Defendant's motion for judgment of acquittal as to the April 5 violation." The State maintains, however, that the hand-delivered citation of April 5 clearly served as sufficient warning for the April 6 and July 1 citations, and therefore, the district court properly denied Defendant's motions for acquittal as to these two violations. We disagree.

The April 5, 1992 citation was not introduced into evidence at either trial. Based on the testimony offered at the August 10, 1992 trial, however, it does not appear that this citation was a "warning citation," which specifically instructed Defendant as to the requirements he had to meet in order to avoid penalties for violating the Animal Nuisance ordinance.

With respect to Defendant's conviction for Animal Nuisance on April 6, 1992, moreover, we note that ROH § 7–2.10(a) specifically provides that its penalty provisions shall not be applicable to a property owner who receives a warning citation and "in good faith carries out the instructions given to said person by the Humane Society." The evidence indicated that Defendant was served with the April 5, 1992 citation while he was on his way to work. Even if the citation contained instructions which Defendant was required to comply with, it seems unrealistic to expect that Defendant could have complied with the instructions overnight.

With respect to Defendant's conviction for committing the offense of Animal Nuisance on July 1, 1992, the record on appeal includes the Notice to the Nobrigas from the City and County of Honolulu Building Department, introduced into the evidence by Defendant as Exhibit A. However, while the Notice orders the Nobrigas to "start making corrections immediately and complete all work within thirty (30) days from date of notice," the corrections that the Nobrigas were required to make are not set forth in the notice. The Notice thus does not satisfy the requirements of ROH § 7–2.10(a).

Since Defendant did not receive the proper warning citations required by ROH § 7–2.10, he was erroneously convicted for violating the Animal Nuisance ordinance on April 5 and 6, 1992 and on July 1, 1992. Although this conclusion is dispositive of Defendant's appeals, we nevertheless address Defendant's remaining contention, since it is obvious from the record that Defendant believes he is legally permitted to keep roosters on his property and will continue to challenge in court any citations for Animal Nuisance that he receives until he receives a final legal determination of the legal parameters of his use of his property.

### B. The "Permitted Use" Exception

Defendant claims that he was entitled to an acquittal because the State failed to prove that he did not fall within any of the exceptions to the Animal Nuisance ordinance, specifically, that the keeping of roosters was not a "permitted use" of Defendant's property.

This same argument was raised by Defendant in a prior appeal of another Animal Nuisance conviction. *State v. Nobriga*, 10 Haw.App. 353, 873 P.2d 110 (1994). In *Nobriga*, this court affirmed Defendant's conviction, concluding that because the "permitted use" exception relied on by Defendant for his defense was not incorporated into the definition of the Animal Nuisance offense but was located in a separate and distinct section of the ordinance, and because the facts constituting the exception were peculiarly within Defendant's knowledge, the initial burden was on Defendant to present facts constituting the "permitted use" defense. 10 Haw. App. at 359, 360, 873 P.2d at 113, 114. Since Defendant had offered absolutely no evidence at trial regarding any exceptive facts, and since the facts constituting his defense were not supplied by the State's witnesses, we held that the State was not required to disprove the defense beyond a reasonable doubt. *Id.*

■ In Appeal No. 16605, Defendant similarly offered no evidence at trial regarding facts which would bring him within the "permitted use" exception to the Animal Nuisance ordinance. Our decision in *Nobriga* is thus dispositive of Defendant's contention

that the State failed to meet its burden regarding this exception; under these circumstances, the State had no such burden.

■ In Appeal No. 16604, however, Defendant's testimony, as well as the Notice which he introduced into evidence as Exhibit A, did supply the exceptive fact that the raising of roosters was a permitted use of Defendant's property. Consequently, the burden did shift to the State to prove, beyond a reasonable doubt, that the permitted use exception did not apply in this case. We therefore examine the record and law to determine whether the State met its burden.

The Animal Nuisance offense is part of ROH article 7. According to ROH § 7–2.1 (1990), the purpose of the article

> is to establish an owner's responsibility for the keeping of animals, farm animals or poultry *on a noncommercial basis* and in a manner which will not endanger or unreasonably interfere with the public health, welfare, safety, peace or comfortable enjoyment of life and property.

(Emphasis added.)

■ Consistent with the foregoing purpose, ROH § 7–2.4(a) states that the Animal Nuisance prohibitions contained in ROH article 7 do not apply to "animals, farm animals or poultry raised, bred or kept as a commercial enterprise or for food purposes where commercial kennels or the keeping of livestock is a permitted use." In other words, it is not a violation of the Animal Nuisance ordinance to raise, breed, or keep poultry for commercial or food purposes, as long as the property on which the poultry is kept is permitted to be used for commercial kennels or the keeping of livestock.

■ We examine initially whether Defendant is permitted to use his property for "commercial kennels or the keeping of livestock." The undisputed evidence at trial established that Defendant's property was zoned "Country." Since the permissible uses of Country-zoned property are prescribed by a City and County of Honolulu land use ordinance, specifically, ROH § 21–5.30–4, Table 21–5.6–A (1990), the issue of whether Defendant's property could properly be used

for commercial kennels or the keeping of livestock is a question of law, which we review *de novo*.

ROH § 21–5.30–4, Table 21–5.6–A lists a number of uses and structures permitted on Country-zoned property. Included in this list are the following:

> Kennels, commercial, provided structures shall not be located within 100 feet of any property line, unless soundproofed and air-conditioned
>
> Livestock [5] grazing [6]
>
> Livestock production, minor [7]

 Based on the foregoing language, Country-zoned property is clearly permitted to be used "for commercial kennels," or for the "keeping of livestock" for grazing and minor livestock production purposes. Therefore, Defendant would not be in violation of the Animal Nuisance ordinance, as long as he was raising, breeding, or keeping his roosters as a *commercial enterprise* or *for food purposes.* ROH § 7–2.4(a) (emphases supplied).

 Defendant testified that he did not raise his roosters for "commercial purposes" because he had been advised by the Building Department that raising roosters on his land for commercial purposes would constitute "livestock production, major," which was not a permitted use of his property. Instead, Defendant explained, he raised the roosters for "consumption" and to display at the annual Hawaii Game Breeders Association show. Defendant did not specifically testify, however, that the roosters he kept were for "food purposes." Furthermore, he did not indicate that *all* of his roosters, including the ones kept for display purposes, were being raised for food purposes.

5. "Livestock" is defined in ROH § 21–9.1 (1990) as including "all animals generally associated with farming, which are raised and kept for food and other agricultural purposes. Such animals include ... chickens, ... and other poultry[.]"

6. "Livestock grazing" is defined in ROH § 21–9.1 as "the raising or feeding of livestock by grazing or pasturing. Not included are feedlots or the raising and keeping of swine."
   The word "grazing" is not specifically defined in the land use ordinance. As defined in *The*

To the extent that any of his roosters were being kept for noncommercial display, rather than food, purposes, they would not fall within the exception to the Animal Nuisance ban and Defendant would be in violation of the Animal Nuisance ordinance for keeping roosters for display purposes.

Since the issue was not presented, we do not address the question of whether Defendant would be in violation of City and County of Honolulu land use ordinances for breeding, raising, or keeping roosters on his property.

Reversed.

*New Webster Encyclopedic Dictionary of the English Language* (1971), however, "grazing" means "[t]he act of feeding on grass; a pasture." *Id.* at 378.

7. "Minor livestock production" is defined as meaning and including "commercial small animal operations as a principal land use, such as a [sic] rabbit farms, apiaries or aviaries." ROH § 21–9.1.